1
2
3
4
5
6                        IN THE UNITED STATES DISTRICT COURT

7                           FOR THE DISTRICT OF ARIZONA

8

9    United States of America,              )   CR-05-0399-PCT-MHM
                                            )
10              Plaintiff,                   )   **ORDER**
                                            )
11   vs.                                     )
                                            )
12                                           )
     Jimmy Shootinglady,                     )
13                                           )
                Defendant.                   )
14                                           )
     _____    )
15

16

17         In May 2005, Defendant was indicted on two counts of aggravated sexual abuse, in

18   violation of 18 U.S.C. §§ 1153 and 2241(a)(1).  Defendant has filed a motion to suppress

19   alleged statements he made to Federal Bureau of Investigation ("FBI") Special Agents on

20   February 25, 2005. (Doc. 35).  The Court held an evidentiary hearing on Defendant's motion

21   to suppress on January 19 and 20,  2006. Counsel presented oral argument on January 25,

22   2006.

23         Defendant has moved to suppress statements as involuntary and not freely and

24   knowingly made, and based on lack of a valid waiver of rights. In order for a confession

25   obtained during a custodial interrogation to be admissible, any waiver of a defendant's

26   Miranda rights must be voluntary, knowing and intelligent. United States v. Vallejo, 237 F.3d

27   1008, 1014 (9th Cir. 2001)(citing Miranda v. Arizona, 384 U.S. 436, 479 (1966)).

28

1    It is the government's burden to prove that a statement was voluntary by a
2  preponderance of the evidence. United States v. Bautista, 362 F.3d 584, 589 (9th Cir. 2004).
3  "In evaluating voluntariness, the test is whether, considering the totality of the circumstances,
4  the government obtained the statement by physical or psychological coercion or by improper
5  inducement so that the suspect's will was overborne." Bautista, 362 F.3d at 589 (quoted
6  citation omitted). In considering the totality of the circumstances, factors to consider include
7  the presence of any police coercion, the length of the interrogation, its location and its
8  continuity, whether the police advised the suspect of his rights, and whether there were any
9  direct or implied promises of a benefit. Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir.), cert.
10  denied, 540 U.S. 968 (2003).  The Court may also consider any language difficulties
11  encountered by the defendant during the interview as bearing on the person's ability to act
12  knowingly and intelligently. See, e.g., United States v. Heredia-Fernandez, 756 F.2d 1412,
13  1415 (9th Cir. 1985)("language difficulties may impair the ability of a person in custody to
14  waive [Miranda] rights in a free and aware manner").

15    A confession that is the product of physical or psychological pressure may be deemed
16  voluntary if it remains "'the product of a rational intellect and a free will.'" United States v.
17  Banks, 282 F.3d 699, 706 (9th Cir. 2002)(quoting Medeiros v. Shimoda, 889 F.2d 819, 823
18  (9th Cir. 1989)), *reversed on other grounds*, 540 U.S. 31 (2003).  Factors that may be
19  significant include the defendant's demeanor during the questioning, and whether the
20  defendant was able to understand the circumstances, follow instructions and answer
21  questions. Banks, 282 F.3d at 706.

22    Constitutional warnings are needed only in cases where a person is in custody or
23  otherwise deprived of his freedom of action in a significant way. United States v. Norris, 428
24  F.3d 907, 912 (9th Cir. 2005).  In determining whether a person is in custody, the Court must
25  examine all of the circumstances surrounding the interrogation but the ultimate inquiry is
26  whether there was a formal arrest or restraint on freedom of movement of the degree
27  associated with a formal arrest. United States v. Coutchavlis, 260 F.3d 1149, 1157 (9th Cir.
28  2001).  "The fact that questioning takes place in a police station does not necessarily mean

1  that such questioning constitutes custodial interrogation." Id. (citing Oregon v. Mathiason,

2  429 U.S. 492, 495 (1977)).  The inquiry focuses on the objective circumstances of the

3  interrogation, not the subjective views of the officers or the individual being questioned.

4  Stansbury v. California, 511 U.S. 318, 323 (1994).

5      The crimes charged in this case are alleged to have occurred on or about February 1,

6  2005.  On February 25, 2005, Defendant was questioned by FBI Special Agents Robert

7  Foster and Steven Thompson in Kayenta, Arizona at the office of Navajo Criminal

8  Investigations.

9      Agent Foster testified that he had indicated to Navajo Investigator Reeder Nez that

10  agents wanted to talk with Defendant regarding an alleged sexual assault involving a victim

11  identified by name. Agent Foster was unsure whether Investigator Nez went to see Defendant

12  or if Defendant came to see Investigator Nez.  In any event, Investigator Nez notified Agent

13  Foster that Defendant would be at the Navajo Investigators office on February 25, 2005

14  around 11:00 a.m.  When Agents Foster and Thompson arrived at the office around this time,

15  Defendant was present sitting in the lobby with family or friends.  Defendant went to an office

16  either with the agents or where Agents Foster and Thompson were already present. The

17  interview took place in an office approximately 12' x 12' or 13' x 13' that contained a desk and

18  three or four chairs.  Photographs of the office and its contents were admitted into evidence.

19      The agents, speaking English, introduced themselves to the Defendant. Agent Foster

20  began the interview by asking Defendant if he knew what he was there for and Defendant

21  answered that he did not.  Agent Foster told the Defendant that there had been an allegation

22  that he had sexually abused his aunt, identifying her by name.  Upon further questioning,

23  Defendant allegedly provided a statement to the agents during this interview. Both agents

24  testified that Defendant was not advised of his Miranda rights.

25      Agents Foster and Thompson do not speak Navajo and communicated with Defendant

26  in English during the interview. Agent Foster took notes during the interview and then

27  prepared a typewritten report. Agent Foster testified that he wrote down what Defendant said

28  to him. Defendant did not make a written statement that contains his signature or initials.

1    Agent Foster has been an FBI agent for approximately ten years and has investigated
2  crimes on the Navajo Reservation for the past three and one- half years  Agent Foster  testified
3  that he has had hundreds of contacts with suspects and witnesses who were Navajo.  Agent
4  Foster for five years was the recreation director at the Bureau of Prisons in Phoenix where 20
5  to 30 percent of the prison population was Navajo. Agent Foster  testified  that  he
6  communicated and spoke with the Navajo prisoners on a regular basis.

7    Agent Foster testified that, based on his experience, he can quickly determine whether
8  or not the person being interviewed can understand the questions that are asked in English.
9  If the person indicates that he does not understand, Agent Foster would ask for a Navajo
10  criminal investigator to assist in the interview.  Agent Foster testified that had he been
11  concerned that Defendant was having difficulty understanding the questions being asked, he
12  could have asked for assistance at the investigators' office from a number of people who speak
13  Navajo.

14    Agent Thompson has been an FBI Agent for approximately two years and has been an
15  investigator on cases occurring on the Navajo Reservation for over a year-and-a-half.  Agent
16  Thompson previously served as a prosecutor in Farmington, New Mexico which is on the
17  eastern border of the Navajo Reservation.  Agent Thompson testified that he has had hundreds
18  of contacts and interaction with Navajo Native Americans who were both charged with crimes
19  and victims of crimes. Agent Thompson testified that he has observed these individuals
20  indicate an inability to communicate in English and that in such circumstances there would
21  not be a "meeting of the minds so to speak."  Agent Thompson also testified that he would
22  have requested the assistance of an investigator who speaks Navajo had it appeared that
23  Defendant did not understand what was being said.  Agent Thompson specifically mentioned
24  that Investigator Nez who speaks Navajo was present at the office and could have assisted in
25  the interview had the agents made such a request.

26    The interview with Defendant lasted between an hour and an hour and a half. Both
27  agents testified that the entire interview was in English and that Defendant appeared to
28  understand the questions asked and what the agents were saying to him. Agent Thompson

1  testified that Defendant's answers were appropriate in response to the questions asked.  The

2  agents did not have any difficulty understanding Defendant when he spoke to them.

3       The agents testified that during the interview, Defendant demonstrated what he had

4  done to the victim by raising his hand and showing the agents to what depth his finger had

5  penetrated the victim's vagina and rectum.  Defendant also agreed to provide a DNA sample

6  and Agent Thompson put on a latex glove from a box of gloves that was on the desk but the

7  sample was not taken.  Defendant did not request an interpreter and did not speak to the agents

8  in the Navajo language.

9       Agent Foster testified that Defendant has an Arizona driver's license and that the

10  examination is ordinarily conducted in English.  Exceptions may be made for Spanish or

11  Asian languages but not Navajo.

12       Government witness Doris Honhongva, the pretrial services officer, is a Native

13  American of the Hopi Tribe and does not speak Navajo.  She testified that she would request

14  an interpreter to assist in conversations with Native Americans who had difficulty

15  communicating in English.  Ms. Honhongva's first contact with Defendant was on April 13,

16  2005 and she conversed with Defendant in English for about 20 minutes about pretrial court

17  conditions. Defense counsel might have been present during this contact. She met with

18  Defendant a second time and went over his release conditions for about 20 minutes.

19  Defendant spoke English when he provided her with information for the bail report.

20  Defendant's third party custodian was present during this contact and conversed in Navajo

21  with the Defendant.

22       Ms. Honhongva testified that from the date of the initial contact until December 5,

23  2005, she did not utilize an interpreter during any of her contacts with Defendant and

24  Defendant did not request an interpreter.  Ms. Honhongva testified that she had no difficulty

25  understanding the Defendant and he did not indicate to her that he did not understand the

26  pretrial services conditions she explained to him.  Ms. Honhongva had weekly contact with

27  Defendant who either directly reported to her or left a voice mail message in English. This

28

1  changed on or about November 22 and December 5, 2005 when Defendant indicated that he
2  did not understand what was being said to him in English.

3  The Court has considered the testimony of the witnesses presented by the Defendant.
4  Defendant's wife, Larinda Shootinglady, testified that the Defendant does not speak English
5  and that she has never heard her husband speak English in their 15 years of marriage.

6  Defendant's sister Carrie Barney, who speaks and understands English and testified at
7  the hearing in Navajo, testified that she communicates with her brother "just in Navajo" and
8  that he knows some small minor words in English. However, Ms. Barney testified that she
9  attended Shonto School with the Defendant and that many of the classes at Shonto School are
10 in English while some are in Navajo.  The pretrial services report indicates that Defendant did
11 not complete high school and he has not pursued a General Equivalency Diploma.

12 David Chitwood and Virginia Young, husband and wife, testified that they are
13 acquainted with the Defendant who has conducted ceremonies or prayers for them.  Mr.
14 Chitwood and Ms. Young testified that Defendant conducts these prayers and ceremonies in
15 Navajo. Ms. Young testified that Defendant speaks Navajo and not English except for a "little
16 bit."  Ms. Young testified that she communicates with Defendant in Navajo.

17 Ms. Katherine Payne also testified on behalf of the Defendant. Ms. Payne holds a
18 masters degree in speech and language pathology and a national certification with the
19 National Speech Language Hearing Association.  Ms. Payne is presently employed as the
20 bilingual speech pathologist for a Tempe School District. Ms. Payne interviewed and
21 evaluated Defendant for English language proficiency on July 20, 2005.  The evaluation and
22 examination took about three hours. Ms. Payne spoke with the Defendant in English and
23 explained the examination to him in English. Ms. Payne discussed with Defendant basic
24 information such as his home life, where he was from, etc. Ms. Payne testified that, based on
25 the evaluation she performed, Defendant is delayed in English, that his receptive language
26 ability is at about the level of three years of age and that his expressive ability is the
27 equivalent to six years and one month. Defendant's overall English language level was four
28 years of age. Ms. Payne's assessment refers to linguistic age, not mental age.

1    The Court has considered the testimony of Defendant's witnesses Ms. Shootinglady,

2  Ms. Barney, and Ms. Young that on the afternoon of February 1, 2005, the date of the alleged

3  incident, Defendant was at the crossroads store and vicinity with his family.  The Court has

4  considered this testimony as bearing on Defendant's contention that the alleged statement to

5  the agents was not "the product of a rational intellect."

6    Based on consideration of the total circumstances, the Court finds that Defendant is

7  able to speak and understand English sufficiently that he understood the questions being asked

8  by the agents during the interview and provided the statement. The Court finds credible the

9  testimony of Special Agents Foster and Thompson and Ms. Honhongva that they

10  communicated with Defendant in English and that he understood what was being said to him.

11  Agents Foster and Thompson have extensive experience interacting with Navajo Native

12  Americans regarding their law enforcement duties. Both testified that they would have

13  obtained the assistance of an investigator who speaks Navajo had it appeared that Defendant

14  did not understand the questions being asked. There is no evidence that the agents had to

15  repeat the questions they asked. Defendant did not request an interpreter during the interview

16  with the agents.  Defendant has an Arizona driver's license and attended Shonto School where

17  classes were taught in English.  Ms. Payne testified that she communicated in English with

18  Defendant during her interview and evaluation of Defendant on July 20, 2005.

19    The Court further finds that Defendant was not "in custody" at the time of the

20  interview. The Defendant arrived at the Navajo Investigator's office accompanied by family

21  members or friends.  Agent Foster testified that before questioning the Defendant he advised

22  the Defendant that he was not in custody and that he would not be placed under arrest no

23  matter what he said. Agent Foster told Defendant that he would be free to leave at the

24  conclusion of the interview.  Agent Foster told the Defendant he would like to hear the truth.

25  Agent Foster did not tell Defendant that he could not leave during the course of the interview.

26    Agent Foster began the interview by asking Defendant if he knew the reason for the

27  interview. When Defendant answered that he did not, Agent Foster explained to the Defendant

28  that there had been an allegation that he had sexually abused his aunt, identifying her by

1    name.  Agent Foster asked Defendant when he had last been to the home of his aunt and

2    grandmother.  When Defendant responded that it had been a couple of years, Agent Foster

3    told him that the agents had evidence that it was more recent than that.  Defendant then

4    answered it was more like three weeks ago.

5          During the interview, Agent Thompson was armed but his sidearm remained holstered.

6    It was not clear whether Agent Foster was armed.  In any event, the agents did not brandish

7    their weapons. The agents did not make any promises or threats to the Defendant.  Defendant

8    was not arrested at the conclusion of the interview which lasted between an hour and ninety

9    (90) minutes.  Defendant left the investigation office with his family or friends who had

10   accompanied him there.  The agents thanked Defendant for coming to talk with them and for

11   being truthful.  During the interview, Defendant appeared relaxed, perhaps a little nervous,

12   and remained seated, slumped down and laid back in his chair.

13         Based on the totality of the circumstances, Defendant's statement to the agents was

14   freely, knowingly and intelligently made, without threats or coercion.  Defendant possesses

15   sufficient ability to speak and understand English that he understood the circumstances and

16   reasons for the interview and the questions asked by the agents.  The Court further concludes

17   that Defendant was not in custody at the time he made the statement to the agents.

18   Defendant's motion to suppress is denied.

19         **Accordingly**,

20         **IT IS ORDERED** that Defendant's motion to suppress oral statements (Doc. 35) is

21   denied.

22         DATED this 13 day of February, 2006.

23

24

25   _____

26   Mary H. Murguia
     United States District Judge

27

28